UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| JAVIER COTTO LÓPEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>UNIÓN DE TRABAJADORES DE LA<br>INDUSTRIA ELÉCTRICA Y RIEGO,<br>X, Y, AND Z INSURANCE COMPANIES,<br>AND A, B, AND C UNIDENTIFIED<br>PERSONS,<br><br>          Defendants. | CIVIL ACTION<br>NO. 3:17-01919-WGY |

YOUNG, D.J.[1]                                     July 17, 2019

## MEMORANDUM AND ORDER

### I.   INTRODUCTION

Plaintiff Javier Cotto López ("Cotto")[2] seeks to amend his complaint against his union, defendant Unión de Trabajadores de la Industria Eléctrica y Riego (the "Union"). See Compl., ECF No. 1; Am. Compl. ("Proposed Am. Compl."), ECF No. 46.  Pursuant to a collective bargaining agreement, the Union represents all workers within Cotto's bargaining unit at the Puerto Rico

---

[1] Of the District of Massachusetts, sitting by designation.

[2] Consistent with practice in Puerto Rico, this Court refers to the plaintiff by his first surname. See Peña Martínez v. Azar, 376 F. Supp. 3d 191, 196 n.3 (D.P.R. 2019) (quoting United States v. Martínez-Benítez, 914 F.3d 1, 2 n.1 (1st Cir. 2019)).

Electric Power Authority (the "Power Authority"), a Puerto Rico "government instrumentality."  Proposed Am. Compl. ¶¶ 2-4; P.R. Laws Ann. tit. 22, § 193.  Cotto contends that the Union violated his free speech and due process rights because it required him to support political ideas that he dislikes and enforced a provision of the collective bargaining agreement mandating Union membership.  See generally Proposed Am. Compl.

At a hearing, this Court dismissed Cotto's original complaint for failure to state a claim.  See March 27, 2019 Minute Order ("Minute Order"), ECF No. 47.  The Court, however, granted Cotto leave to file a motion to amend his complaint to clarify his claim arising out of Janus v. American Fed'n of State, Cty., & Mun. Emp., Council 31, 138 S. Ct. 2448 (2018). See Minute Order; see generally Samuel Mark Lyon, Casenote, Mandatory Fees No More!: Janus v. AFSCME Continues First Amendment Trend and Effectively Eliminates Union Power, 70 Mercer L. Rev. 799 (2019).

For the reasons set forth below, this Court ALLOWS in part and DENIES in part Cotto's motion for leave to amend his complaint.  Cotto may go forward only with his claims for damages related to his allegedly compelled attendance at a February 11, 2016 Union rally and an order for the Union to accept his resignation.

[2]

## A.   Factual Background

On August 8, 2012, the Power Authority hired Cotto as an electrical maintenance technician.   Proposed Am. Compl. ¶ 3. Contingent upon his employment, the Power Authority required Cotto to be a dues-paying Union member, even though Cotto opposed the Union's political stances and bargaining positions. See id. ¶ 4.   In particular, Cotto complains that the Union engages in activism unrelated to workplace issues and uses "union facilities and resources[] for leftist groups, marches, and demonstrations against the USA, Free Market, Free World, [and] Private Property Rights."   Id. ¶ 5.

Cotto further asserts that the Union requires him to participate in the very political activism with which he disagrees.   See id. ¶ 11.   Cotto's proposed amended complaint specifically describes two such occurrences.   See id.   First, Cotto complains that, on June 17, 2014, the Union held a General Assembly in which Union leaders forced the membership to approve a strike.   Id. ¶ 11(a).   After the vote, Union leaders "oblige[d]" the members to march on Plaza Las Américas "to disrupt its commercial activities and to 'attack the exploitation of the rich against the people.'"   Id. ¶ 11(b). Cotto claims that he disagreed with the strike and the sentiments that the Union leaders expressed at the march.   See id.

Second, on February 10 and 11, 2016, the Union demonstrated against the Puerto Rico legislature's restructuring of the Power Authority.  See id. ¶¶ 8, 11(c).  Cotto alleges that he attended the February 11 demonstration, but that the Union excused him from the February 10 demonstration because of "an accident that occurred with a colleague in the Barranquitas Technical Station."  Id.  On September 13, 2016,[3] as a result of Cotto's alleged failure to attend the February 11 demonstration, the Union's Discipline Committee fined Cotto $200.  Id. ¶¶ 7-9.[4]  The Discipline Committee sent Cotto "several letters" about the

---

[3] Cotto incorrectly states in his complaint and his proposed amended complaint that the Committee fined him on September 13, 2017, which would have been after the date that Cotto filed his original complaint.  Proposed Am. Compl. ¶ 3; Compl. 11.

[4] The Court infers that Cotto alleges that the Union fined him for his supposed absence from the February 11, 2016 demonstration.  Paragraph 7 of the proposed amended complaint explains that the Union accused him of failing to attend a demonstration that Cotto protests that he actually attended.  In the following paragraph, Cotto avers that he attended the February 11, 2016 demonstration and offers a witness to back up his averment.  Proposed Am. Compl. ¶ 8.  The proposed amended complaint then alleges that the Union fined Cotto for his absence from an unspecified demonstration despite Cotto having actually attended the unspecified demonstration.  Id. ¶ 9.  Considering that Cotto did not contradict the Union's assumption in its papers that his complaints refer to the February 11 demonstration, the provision of a witness who says he was at that demonstration, and the February 11, 2016 demonstration is the only demonstration that Cotto specifically claims to have attended, the Court concludes that paragraph nine refers to the February 11, 2016 demonstration.  Mot. Dismiss Under Rule 12(b)(1) & (6) Fed. R. Civ. P. at 20 ("Union Mot. Dismiss"), ECF No. 9; Mot. Dismiss. Am. Compl. Under Rule 12(b)(1) & (6) Fed. R. Civ. Proc. at 18 ("Union Opp'n Mot. Leave"), ECF No. 48.

fine, but Cotto believed that the Union's attempt to enforce its
policy requiring members to attend protests "was so intrusive,
persecutory and discriminatory," so did not respond to them.
Id. On May 29, 2017, the Union filed a civil suit to recover
the fine and attorneys' fees in the Caguas, Puerto Rico
Municipal Court.  See id. ¶ 9.

Cotto also objects to a variety of other Union practices.
Cotto alleges that the Union "unexpected[ly] calls" union
members encouraging them to: (1) not work on certain days, (2)
report all vehicles as being "unusable," (3) not work overtime,
and (4) deliberately delay work to reduce efficiency and
productivity.  See id. ¶ 11(d).  Furthermore, Cotto states that
the Union's protests consisted of "foul language, insults, and
drinking," which created a "hostile environment" for Union
members, such as Cotto, who "respect others" for their personal
beliefs and morals.  See id. ¶ 11(g).  According to Cotto, the
Union also conducted an illegal secondary boycott of Banco
Popular, an affiliate of Cotto's wife's longtime employer.  See
id. ¶ 6.  Cotto's proposed amended complaint omits several
details about this supposed secondary boycott:  For instance,
although he says the Union "obliged" him to participate, he does
not say whether he did participate or if the Union threatened
to, or actually did, impose adverse employment consequences on
him for refusing to participate.  See id. ¶ 19.  Nor does

[5]

Cotto's proposed amended complaint allege when those demonstrations took place.  See generally id.

Additionally, Cotto alleges that he attempted to resign his Union membership in September 2018.  See id. ¶ 10.  Cotto sent the Union a resignation letter, which argued that the Supreme Court's recent decision in Janus permitted him to quit the Union.  See id.  In October 2018, the Union's president sent Cotto a letter asserting that Janus did not alter the legality of the Union's union shop agreement with the Power Authority and refused to accept Cotto's resignation.  See id.

**B.  Procedural History**

Cotto filed his original complaint on July 5, 2017.  Compl. 1.  Cotto's original complaint contained three "causes of action" alleging: (1) violations of the First Amendment to the United States Constitution; (2) violations of the Due Process Clause of the Fifth or Fourteenth Amendment[5] to the United States Constitution; and (3) violations of the Puerto Rico constitution.  Id. ¶¶ 13-21.  In his original complaint, Cotto demanded $300,000 in compensatory damages and $300,000 in

---

[5] Neither the Supreme Court nor the First Circuit has specified which amendment's due process clause binds the Puerto Rico government.  See Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 601 (1976).  Nevertheless, the Supreme Court has held that one of the two amendments' due process clause protects Puerto Rico residents.  See id.

punitive damages.  Id. ¶¶ 24-25(a).  He also sought a permanent injunction against the Union, requiring it to "respect his Free Speech and Free Association rights" and to "refrain from further engaging in adverse union member action based on ideological beliefs."  Id. ¶ 25(b).

The Union moved to dismiss the original complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6).  Mot. Dismiss Under Rule 12(b)(1) & (6) Fed. R. Civ. P. ("Union Mot. Dismiss"), ECF No. 9.  The parties fully briefed the motion. See Pl.'s Opp'n Def.'s Mot. Dismissal, ECF No. 28; Reply Pl.'s Opp'n Def.'s Mot. Dismissal ("Union Reply"), ECF No. 36; Pl.'s Surreply to Def.'s Reply, ECF No. 39.

At the March 27, 2019 hearing, this Court allowed the Union's motion to dismiss and gave Cotto leave to file a motion to amend his complaint to clarify his First Amendment claim as it related to the Janus decision.  Minute Order.  On April 5, 2019, Cotto purported to file an "amended complaint."  Proposed Am. Compl. 1.  The proposed amended complaint largely restates the original complaint's allegations, "causes of action," and prayer for relief.  Compare generally Proposed Am. Compl. with Compl.  In addition, the proposed amended complaint asserts that the Union thwarted Cotto's attempt to resign from the Union and asks the Court to order the Union to allow him to resign.  See Proposed Am. Compl. ¶ 12.  On April 25, 2019, the Union moved to

dismiss Cotto's proposed amended complaint, which Cotto opposed on May 18, 2019. Mot. Dismiss. Proposed Am. Compl. Under Rule 12(b)(1) & (6) Fed. R. Civ. P. ("Union Opp'n Mot. Leave"), ECF No. 48; Pls.' Opp'n Defs. 2nd Mot. Dismissal Filed April 25, 2019 ("Cotto Mem. Leave"), ECF No. 50. The Court construes these post-motion hearing filings as briefing on a motion for leave to amend the complaint. See Minute Order.

After careful consideration of the parties' submissions with respect to both the motions to dismiss and for leave, the Court ALLOWS Cotto's motion for leave to file his amended complaint, ECF No. 46, only to the extent that the proposed amended complaint theorizes that Cotto's compelled attendance at the February 11, 2016 rally and inability to resign from the Union violates the First Amendment. See Proposed Am. Compl. ¶ 12.

## II. SUBJECT MATTER JURISDICTION

The Union challenges this Court's exercise of subject matter jurisdiction. See Union Mot. Dismiss 23-25; Union Reply 2-6; Union Opp'n Mot. Leave 11-17, 19-20. A party may attack the Court's subject matter jurisdiction on any ground, including the plaintiff's constitutional standing, at any time in the case. See Kontrick v. Ryan, 540 U.S. 443, 455 (2004); Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).

The Union appears to raise two objections to this Court's subject matter jurisdiction.  See Union Mot. Dismiss 23-25; Union Reply 2-6; Union Opp'n Mot. Leave 11-17, 19-20.  First, it argues that the proposed amended complaint does not allege that Cotto suffered an injury in fact sufficient for him to have standing.  Union Opp'n Mot. Leave 15-17.  Second, it suggests that the proposed amended complaint does not arise under federal law.  Id. at 11-14, 19-20.  Both objections are meritless.  Cotto alleges at least two injuries in his proposed amended complaint and seeks relief under the First Amendment because he contends that the Union coerced Cotto to advocate for ideas with which he disagreed by fining him for allegedly failing to attend protests and enforced the Union's collective bargaining agreement with the Power Authority.  See Proposed Am. Compl. ¶¶ 10, 12.

A.    **Standard of Review**

In analyzing a challenge to its subject matter jurisdiction, this Court accepts the plaintiff's allegations as true and views them in the light most favorable to him.  See Estate of Rosario v. Falken Tire Corp., 109 F. Supp. 3d 485, 490 (D.P.R. 2015) (Besosa, J.) (citing Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994)).  This Court may "consider materials outside the pleadings" when ruling on

[9]

such a motion.  See Gonzalez v. United States, 284 F.3d 281, 288
(1st Cir. 2002).  Cotto carries the burden of showing subject
matter jurisdiction exists because he invokes this Court's
jurisdiction.  See Peña Martínez v. Azar, 376 F. Supp. 3d 191,
200 (D.P.R. 2019) (citing Wolf v. Altitude Costa LLC, 347 F.
Supp. 3d 106, 108 (D.P.R. 2018)).

**B.   Analysis**

Cotto has constitutional standing to lodge his claims, and
some of those claims arise under the federal constitution.
Cotto asserts that the Union forced him to participate in
demonstrations for causes he opposed and denied his request to
resign, thereby injuring him.  See Proposed Am. Compl. ¶ 12;
Janus, 138 S. Ct. at 2462-63 (ruling that employee forced to pay
fee to union despite philosophical disagreements suffered a
constitutionally cognizable injury).  Furthermore, the Court is
satisfied at this stage[6] that section 1331 of chapter 28 of the

---

[6] Despite neither party raising the issue, the Court
observes that it might lack subject matter jurisdiction to
adjudicate the claim related to Cotto's absence from the
February 11, 2016 demonstration under the Rooker-Feldman
doctrine.  See District of Columbia Court of Appeals v. Feldman,
460 U.S. 462, 482 (1983); Rooker v. Fidelity Tr. Co., 263 U.S.
413, 414-16 (1923); see also Maymó-Meléndez v. Álvarez-Ramírez,
364 F.3d 27, 33 n.7 (1st Cir. 2004) (reasoning that court must
raise Rooker-Feldman on its own initiative because it affects
court's subject matter jurisdiction).  The Rooker-Feldman
doctrine precludes federal district court jurisdiction to
entertain "cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court

[10]

United States Code ("Section 1331") provides this Court with

subject matter jurisdiction over Cotto's hypotheses that the

Union violated his constitutional rights.  See 28 U.S.C. § 1331

(providing the Court with "original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the

United States").

     **1.**   **Standing**

Cotto has standing under Article III of the United States

Constitution.  In order to possess constitutional standing, a

plaintiff must show: (1) an injury in fact, (2) a causal

connection between the injury and the conduct to which the

plaintiff objects, and (3) that the Court can redress the injury

---

review and rejection of those judgments."  Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (emphasis
added).  In contrast, federal district courts maintain
jurisdiction over a case filed during or after a state court
suit started, subject to claim and issue preclusion principles.
See id. at 292-93.
    The Union initiated a Puerto Rico court suit on May 29,
2017 to enforce the fine it imposed on Cotto for his absence at
the February 11 demonstration, Proposed Am. Compl. ¶¶ 7-9, and
apparently received a favorable outcome, Union Opp'n Mot. Leave
18.  The parties leave unsaid whether the Puerto Rico court
entered judgment before Cotto filed either his original or
amended federal court complaint.  See Pellegrini v. Northeastern
Univ., 323 F. Supp. 3d 182, 186 (D. Mass. 2018) (Hillman, J.)
(dismissing case under Rooker-Feldman doctrine where original
complaint filed while state court proceedings were pending but
plaintiff amended complaint after state court proceedings
ended); aff'd mem. No. 18-2031 (1st Cir. June 3, 2019), petition
for reh'g en banc filed June 14, 2019.  The Court thus requests
the parties to advise it on its jurisdiction to decide this
claim (and any others) in light of the Rooker-Feldman doctrine.

with a favorable decision.  See Belsito Commc'ns, Inc. v.
Decker, 845 F.3d 13, 21 (1st Cir. 2016).  Of these elements, the
Union only asserts that Cotto has failed to show an injury in
fact.  Union Opp'n Mot. Leave 15-17.  An injury in fact must be
both "concrete and particularized," as well as "actual or
imminent," rather than merely "conjectural or hypothetical."
See Belsito Commc'ns, Inc., 845 F.3d at 21 (quoting Lujan v.
Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Here,
Cotto alleges at least two cognizable injuries: that the Union
fined him for supposedly skipping a protest and that the Union
refused his resignation.  See Proposed Am. Compl. ¶¶ 9-12;
Janus, 138 S. Ct. at 2462-63.  Taking the complaint as true, the
Court rules that these alleged harms establish constitutional
standing to bring this suit.

## 2.  Arising Under Jurisdiction

The Court also rules that Cotto's proposed amended
complaint includes claims that arise under the federal
constitution.[7]  In its opposition to Cotto's motion for leave to
amend, the Union misunderstands the jurisdictional basis for
Cotto's proposed amended complaint.  Instead of explaining why
Section 1331 does not vest this Court with jurisdiction, the

---

[7] The Court makes this ruling with the caveat that the
Rooker-Feldman doctrine may prevent it from exercising
jurisdiction over some claims.  See supra note 6.

Union exhorts the Court to rule that it lacks jurisdiction under the Labor-Management Reporting and Disclosure Act of 1959 (the "Landrum-Griffin Act"), 29 U.S.C. §§ 401-531, or section 1983 of chapter 42 of the United States Code ("Section 1983").  Union Opp'n Mot. Leave 11-14 (urging the Court to rule that it lacks jurisdiction because the Union is not a state actor under section 1983), 19-20 (arguing that the Court should hold that it has no jurisdiction under the Landrum-Griffin Act).  The Union has its analysis backwards.  A complaint may not state a claim for relief under a federal statute, such as the Landrum-Griffin Act or Section 1983, but nonetheless fall within Section 1331 jurisdiction because the complaint colorably alleges a constitutional violation.  See Bell v. Hood, 327 U.S. 678, 684 (1946) (holding district court could entertain suit against federal officers for constitutional violation notwithstanding absence of statutory cause of action).

Insofar as the Union objects to whether the proposed amended complaint colorably alleges that the Union is a state actor subject to the constitution, the Court rules that the proposed amended complaint raises a nonfrivolous question whether or not it is.[8]  See Proposed Am. Compl. ¶¶ 2, 10

---

[8] Cotto conceded in a brief that he could not proceed against the Union under the Landrum-Griffin Act.  Cotto Mem. Leave ¶ 18.

(alleging that the Union enforced its collective bargaining with the Power Authority, a government instrumentality).  If and when the Union resurrects this objection as one on the merits, the Court will tackle that tricky issue.  Compare William Baude & Eugene Volokh, Compelled Subsidies and the First Amendment, 132 Harv. L. Rev. 171, 201 (2018) (arguing that public employee unions act under color of state law for purposes of Section 1983 when they collect state-mandated fees) with Erwin Chemerinsky & Catherine L. Fisk, Exaggerating the Effects of Janus: A Reply to Professors Baude and Volokh, 132 Harv. L. Rev. F. 42, 44-47 (2018) (countering that public employee unions do not act on the state's behalf when complying with state laws).[9]  Until then, the Court need not elaborate further, except to conclude that it has Section 1331 jurisdiction over Cotto's proposed amended complaint.

Consequently, the Court rules that it has subject matter jurisdiction to consider the proposed amended complaint.

## III. FUTILITY

Cotto's proposed amended complaint states viable Section 1983 claims; that is, that the Union deprived him

---

[9] The Court anticipates that its joinder of the Power Authority, explained below in Part IV, will likely resolve any state action issue.  See P.R. Laws Ann. tit. 22, § 193.  For now, this memorandum decides only that the proposed amended complaint includes a colorable -- not a plausible -- claim that the Union is a state actor.

[14]

of his First Amendment rights when it fined him for his alleged absence from the February 11, 2016 protest and did not accept his resignation.  Since the Union did not oppose Cotto's motion for leave to amend his complaint on the ground that he could not succeed on the merits of his state law claims, the Court takes no action with regard to them insofar as they too arise out of Cotto's absence from the February 11, 2016 demonstration or resignation effort.  See generally Union Mot. Dismiss; Union Opp'n Mot. Leave.

The relevant statutes of limitations bar Cotto's claims stemming from actions that took place before July 5, 2016 and the effects of those actions.  See Union Opp'n Mot. Leave 5-9.  Cotto does adequately allege that he lacked notice of his claim stemming from the February 11, 2016 protest until the Union attempted to fine him on September 13, 2016.  See id.

As to the claims surviving the statute of limitations, Cotto fails to state a claim based on the supposed secondary boycott.  The Court rules, however, that the proposed amended complaint plausibly alleges a violation of the First Amendment concerning the actions taken by the Union concerning the February 11, 2016 demonstration and fine on September 13, 2016, and that the First Amendment entitles Cotto to disaffiliate from the Union.

[15]

## A.   Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave [to amend] when justice so requires."  The Court may decline to give leave where amendment would be futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court interprets the Union's arguments that the proposed amended complaint fails to state a claim as urging the Court to deny Cotto leave to amend because amendment would be futile. See Union Opp'n Mot. Leave 2-4.  "In assessing futility, courts apply the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  Winfield v. Town of Andover, 305 F. Supp. 3d 286, 291 (D. Mass. 2018) (citing Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Factual allegations in a complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.  The complaint must "provide the grounds of his entitle[ment] to relief," which means "more than labels and conclusions."  Id. (internal quotations and citation omitted).  Accordingly, a complaint that merely states a "formulaic recitation of the elements of a cause of action" does not suffice.  See id. (internal quotations and

citation omitted). A complaint must instead accompany its conclusory statements with specific factual allegations so as to survive a Rule 12(b)(6) motion. See Denehy v. Massachusetts Port Auth., 42 F. Supp. 3d 301, 307 (D. Mass. 2014) (quoting Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 773 (1st Cir. 2011)). When ruling on a Rule 12(b)(6) motion to dismiss, this Court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. See Román-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 45 (1st Cir. 2011). "The district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations 'when the pleader's allegations leave no doubt that an asserted claim is time-barred.'" DeGrandis v. Children's Hosp. Boston, 806 F.3d 13, 16-17 (1st Cir. 2015) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)).

**B.  Analysis**

Upon careful consideration of the proposed amended complaint, the Court concludes that it only states plausible entitlements to relief stemming from Cotto's fine for allegedly failing to attend the February 11, 2016 protest and the Union's refusal to accept his resignation. In opposing Cotto's motion for leave to amend, the Union repeats the arguments that it

[17]

raised in its motion to dismiss. Compare Union Mot. Dismiss with Union Opp'n Mot. Leave. The Court agrees with the Union to the extent that the statute of limitations forecloses claims other than those related to the February 11, 2016 protest, the supposed (undated) secondary boycott, and Cotto's resignation attempt.

As the Court noted in its jurisdictional analysis, the Union argued that Cotto cannot pursue causes of action under the Landrum-Griffin Act and Section 1983. See supra Part II. Cotto admits that he cannot state a Landrum-Griffin Act claim against the Union, Cotto Mem. Leave ¶ 18, so the Court need only decide whether he may pursue a Section 1983 claim. The Court holds that Cotto fails to show that he is plausibly entitled to relief from the Union's alleged secondary boycott, but he has so shown with respect to his damages claim related to the February 11, 2016 protest and his request to resign from the Union.

### 1.   Statute of Limitations

The Court concludes that the proposed amended complaint's claims stemming from pre-July 5, 2016 conduct are untimely. Puerto Rico's one-year statute of limitations applies to the proposed amended complaint's federal and state law claims. See P.R. Laws Ann. tit. 31, § 5298(2); Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) ("In Puerto Rico, [Section] 1983 claims are subject to a one-year statute of

limitations."). Since Cotto filed his original complaint on July 5, 2017, his claims must have accrued on or after July 5, 2016 to be timely.

Cotto insists that, under the continuing violations doctrine, his claims did not accrue until the last violation occurred. Cotto Mem. Leave 4 n.4, 8 nn.7 & 8. "As a general principle, section 1983 claims accrue 'when the plaintiff knows, or has reason to know, of the injury on which the action is based.'" Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (quoting Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 96-97 (1st Cir. 2004)). True, the continuing violations doctrine "allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Morales-Tañon, 524 F.3d at 18-19 (quoting Limestone Dev. Corp. v. Village of Lemont, 520 F.3d 797, 801 (7th Cir. 2008) (Posner, J.)). Yet this doctrine neither permits a plaintiff to bootstrap an otherwise time-barred claim to independent alleged wrongful acts within the limitations period nor rely on the later consequences of acts outside the limitations period to delay their accrual. See Pérez-Sánchez v. Public Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).

Cotto's proposed amended complaint specifies only alleged mandatory demonstrations that occurred before July 5, 2016 and attempts to hold Cotto responsible for failing to attend events

[19]

prior to that date.  See P.R. Laws Ann. tit. 31, § 5298(2);

Pérez-Sanchéz, 531 F.3d at 107.  For instance, Cotto asserts

harms from an allegedly undemocratic Union meeting and

subsequent protest on June 17, 2014.  See id. ¶ 11(b).  These

events, as alleged, appear to be attempts to coerce Union member

speech and thus independently actionable.  See id.  Ergo, any

claim resulting from those events accrued well before July 5,

2016.  See Pérez-Sanchéz, 531 F.3d at 107.

    Next, Cotto alleges that the Union compelled him to attend

two protests on February 10 and 11, 2016.  See Proposed Am.

Compl. ¶ 11(c).  As a consequence of supposedly skipping the

February 11, 2016 protest, Cotto alleges that the Union fined

him $200 at an internal hearing on September 13, 2016.  See id.

¶ 9.  Because Cotto plausibly states that he did not know of his

injury, that is, that the Union would attempt to punish him for

his presence or absence from the rally until September 13, he

filed his claim within the limitations period.  Cf. Marrero-

Gutierrez, 491 F.3d at 5-6.

    Accordingly, the Court DENIES the motion for leave to amend

to the extent that it purports to seek damages from the events

that the proposed amended complaint describes on June 17, 2014

and February 10, 2016.  At this time, though, the Court ALLOWS

Cotto to amend his complaint to press the claim related to the

February 11, 2016 demonstration.

## 2. Section 1983

The Court ALLOWS Cotto's motion for leave to amend his complaint to allege that the Union violated Section 1983 with respect to the February 11, 2016 boycott and when it refused to accept Cotto's resignation.  To plead a Section 1983 claim, a plaintiff must allege: "(1) that the named defendant acted under color of state law; (2) that the plaintiff was deprived of federally protected rights, privileges or immunities; and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation."  Bolet v. Puerto Rico Elec. Power Auth., 109 F. Supp. 3d 459, 463 (D.P.R. 2015) (Gelpí, J.) (citing Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989)).  "For purposes of [Section 1983], Puerto Rico 'is deemed equivalent to a state.'"  Elena v. Municipality of San Juan, 677 F.3d 1, 6 n.5 (1st Cir. 2012) (quoting Déniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002)).

Of these elements, the Union urges the Court to rule that the proposed amended complaint only fails to allege that the Union deprived Cotto of his "federally protected rights, privileges or immunities."  See Union Opp'n Mot. Leave 17-18; Bolet, 109 F. Supp. 3d at 463.  As the Court reads his proposed amended complaint, Cotto offers three non-time-barred theories that he contends support a holding that the Union deprived him

of his First Amendment rights.[10]   First, he seems to argue that
the Union violated the First Amendment when it "obliged" Cotto
"to participate in marches and demonstrations against his
wife['s] employer or business related to her employer."
Proposed Am. Compl. ¶ 19.   Second, Cotto argues that the Union
punished him for allegedly failing to demonstrate on February
11, 2016.   Id. ¶¶ 7-9.   Third, Cotto posits that Janus permits
him to resign his Union membership.   Id. ¶¶ 10, 12.

   The First Amendment provides that "Congress shall make no
law respecting an establishment of religion, or prohibiting the
free exercise thereof; or abridging the freedom of speech, or of
the press; or the right of the people peaceably to assemble, and
to petition the Government for a redress of grievances."   While
on its terms the First Amendment limits only Congress, the

---

   [10] Cotto says the Union's denial of his request to resign
works a "Due Process violation to . . .[Cotto's] . . . Free
Speech Rights."   Cotto Mem. Leave ¶ 17.   The Supreme Court,
however, has held that the First Amendment constrains the Puerto
Rico government without reference to incorporation doctrine.
See Balzac v. Porto Rico, 258 U.S. 298, 314 (1922).   What's
more, the proposed amended complaint does not allege that the
Union did not provide an adequate process to Cotto when he
sought to resign; instead, it alleges that the Union violated
the constitution when it refused to accept Cotto's resignation.
See Proposed Am. Compl. ¶ 10.   Nor does the proposed amended
complaint object to the hearing that the Union afforded Cotto,
as it only objects to the fine itself.   See id. ¶¶ 7-9
(asserting that Cotto refused to respond to notices regarding
the fine because the fine "was so intrusive, persecutory and
discriminatory").   Ergo, no freestanding due process claim
exists in this case.

[22]

Supreme Court has held that it also binds the Puerto Rico government.  See Torres v. Puerto Rico, 442 U.S. 465, 469 (1979); Mangual v. Rotger-Sabat, 317 F.3d 45, 53 n.2 (1st Cir. 2003).

Cotto contends that the Union deprived him of his First Amendment rights by coercing him to endorse ideas that he finds objectionable.  As the Supreme Court stated in West Virginia State Board of Education v. Barnette, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." 319 U.S. 624, 642 (1943); see also Elrod v. Burns, 427 U.S. 347, 367 (1976) (prohibiting public employers from using membership in political organization in making hiring decisions except for "policymaking" employees).  The Court therefore turns its attention to whether Cotto adequately alleges that the Union coerced him to endorse ideas with which he disagrees.[11]

---

[11] As the Court mentions above, the Union framed its arguments surrounding whether it acted under color of state law as jurisdictional.  See Union Opp'n Mot. Leave 11-14, 19-20. Notwithstanding some stray remarks implying that the Union also challenges whether Cotto could state a section 1983 claim against it, the Union is stuck with its framing that the Court lacks jurisdiction because Cotto failed to allege state action. See id. at 13, 21.  Despite the Union's framing choice in this motion, the Court reiterates that the Union may challenge state action again, later in the litigation.  See supra note 7.

### a.   Secondary Boycott

Cotto's conclusory allegation that the Union "obliged" him to protest Banco Popular does not reveal a plausible entitlement to relief because his proposed amended complaint lacks supporting facts.  See Proposed Am. Compl. ¶¶ 6, 19.  As the Union observes, the proposed amended complaint does not provide any information about any alleged march or demonstration against Banco Popular.  Union Opp'n Mot. Leave 17; see generally Proposed Am. Compl.  Most importantly, the proposed amended complaint lacks allegations about whether Cotto in fact attended these demonstrations or protests or the basis for Cotto's claim that the Union "obliged" him to attend them.  See Proposed Am. Compl. ¶¶ 6, 19.  Absent such allegations, the proposed amended complaint does not permit the inference that the Union "obliged" Cotto to engage in express conduct.  See id. ¶ 19.  For instance, Cotto might have defied the Union's order to protest and suffered no consequence.

As a result, the Court rules that Cotto's proposed amended complaint lacks sufficient factual allegations supporting his allegation that the Union "obliged" him to demonstrate against Banco Popular.  See Aragao v. Mortgage Elec. Registration Sys., Inc., 22 F. Supp. 3d 133, 138-39 (D. Mass. 2014) (dismissing count where it was "nearly devoid" of relevant factual allegations).  The Court thus DENIES Cotto's motion for leave to

[24]

amend his complaint to maintain claims related to the alleged
secondary boycott.

### b.   February 11, 2016 Protest

The insufficiency of the secondary boycott allegations
becomes clearer when contrasted with the allegations surrounding
the February 11, 2016 protest.  Unlike with respect to his
secondary boycott allegations, Cotto specifies the date of this
demonstration and details the Union's attempts to coerce his
attendance.  See Proposed Am. Compl. ¶¶ 7-9.  Moreover, Cotto's
proposed amended complaint provides more factual information
about the subject of the February 11, 2016 demonstration.
Compare id. ¶ 11(c) (alleging the Union demonstrated against the
Puerto Rico legislature's restructuring of the Power Authority)
with ¶ 6 (offering no explanation for the supposed secondary
boycott).  Therefore, the Court rules that, as to the February
11, 2016 protests, Cotto's proposed amended complaint alleges a
deprivation of his First Amendment rights.  See Bell Atl., 550
U.S. at 570.

### c.   Resignation Attempt

The proposed amended complaint states a claim that the
Union's enforcement of its union shop agreement violates Cotto's
First Amendment freedoms.  Proposed Am. Compl. ¶¶ 7-11.  The
Union insists that Janus does not apply here because that case
barred a public employee union from collecting fees from

nonunion employees, not from enforcing a bargaining agreement that requires all employees to belong to a union.   Union Opp'n Mot. Leave 18.

Although the parties frame their dispute around divergent interpretations of Janus, the Court begins its analysis of this issue with the case that Janus overruled in part, Abood v. Detroit Board of Education, 431 U.S. 209 (1977).   In Abood, the Supreme Court considered the constitutionality of public sector "agency shop" agreements.   431 U.S. at 211.   Such agreements do not compel all employees in a bargaining unit to join a public employee union but do mandate that employees "pay to the union, as a condition of employment, a service fee equal in amount to union dues."   Id.   Union shop agreements go one step further and require employees to join a union; still, the Supreme Court reasoned that they are the "practical equivalent of [] agency shop" agreements.   Id. at 217 n.10 (internal citation and quotation omitted).

The Supreme Court did not approve agency shop agreements in full in Abood.   Id. at 235-36.   While it recognized that service fees implicated First Amendment rights, the Supreme Court distinguished between fees used to support bargaining and non-bargaining activities.   Id. at 232-33.   For bargaining activities, it ruled that the state interests in avoiding labor disputes and "free riders" justified requiring financial support

[26]

from nonmembers.  Id. at 224.  The Supreme Court nonetheless reckoned that those interests could not rationalize forcing nonmembers to support non-bargaining political activities.  Id. at 235-37.  The Janus decision overruled Abood only on the former point: today, states may not require public employees to pay any union fees to keep their jobs.  Janus, 138 S. Ct. at 2463-78.

The Court agrees with the Union that Abood and Janus do not directly map on to the constitutionality of union shop agreements.  See Union Opp'n Mot. Leave 18.  Those cases address a nonmember's compelled financial support of a union.  See Abood, 431 U.S. at 235; Janus, 138 S. Ct. at 2460.  They do not deal with a hypothetical union shop agreement that mandates membership in a union that neither collects fees nor takes positions on issues of public importance outside of collective bargaining.  See Abood, 431 U.S. at 235; Janus, 138 S. Ct. at 2460.

Yet this Union bears no resemblance to that hypothetical apolitical, costless union, at least as Cotto alleges how it operates.  First and foremost, Cotto says the Power Authority and the Union require him to be a dues-paying Union Member.  Proposed Am. Compl. ¶ 4.  Second, Cotto asserts that the Union rallies for political causes and assesses financial penalties from members who do not participate in the Union protests.  See

Id. ¶ 9.  Such fees and penalties seem problematic even under the erstwhile Abood framework; Puerto Rico, acting through the Power Authority and the Union, allegedly compel Cotto and others to bolster certain political beliefs.  See Abood, 431 U.S. 235-37.  Moreover, levying even a service fee or a fine for failing to participate in collective bargaining activities runs afoul of the First Amendment after Janus.  See 138 S. Ct. at 2463-78.

Given the Court's understanding of the Abood framework, the Court admits puzzlement as to how this case just now arose.  The Court reads the Janus decision not to disturb the observation in Abood that agency and union shop agreements raise the same constitutional concerns.  See Abood, 431 U.S. at 217 n.10.  Nor is it clear to the Court, accepting the proposed amended complaint's allegations as true, how the Union and the Power Authority could enforce their union shop agreement considering Abood's prohibition against requiring public employees to engage in overtly political union speech.  See id. at 235-37.

The Union president's letter rejecting Cotto's resignation, restated in the proposed amended complaint, provides a clue.  The letter cites two Puerto Rico statutes: Act 130 of 1945, the Puerto Rico Labor Relations Act, and Act 45 of 1998, the Puerto Rico Public Service Labor Relations Act.  See Proposed Am. Compl. ¶ 10 (citing October 1, 2018 Letter, ECF No. 41-2; English Translation, ECF No. 50-1).  Although the Puerto Rico

Public Service Labor Relations Act provides many Puerto Rico public employees with the statutory option to disaffiliate from their union, it does not reach all public employees. See P.R. Laws Ann. tit. 3, §§ 1454, 1454a. In particular, the Puerto Rico Public Service Labor Relations Act, excludes employees of public entities that "operate as a private business." See id. at § 1451a(b). In a different Puerto Rico statute with similar language, the First Circuit explained that it did not apply to the Power Authority because that statute too had a carveout for "public corporations that operate as private businesses." Colon-Santiago v. Rosario, 438 F.3d 101, 104 n.2 (1st Cir. 2006).

As a result, it appears as if the Union, the Power Authority, and employees in the bargaining unit relied on federal and Puerto Rico statutes permitting union shop agreements in private sector employment. See 29 U.S.C. § 158(a)(3) (allowing employers and unions to agree "to require as a condition of employment membership" in the union in certain situations); P.R. Laws Ann. tit. 29, § 69(1)(c) (stating that "nothing herein contained prohibits an employer from making an all-union shop contract or a maintenance of membership agreement with any labor organization" meeting certain conditions). The Union does not oppose the motion by defending the distinction that the Puerto Rico Public Service Labor Relations Act makes as

matter of federal constitutional law.  See generally Union Opp'n

Mot. Leave.  The Court thus does not pass on that distinction's

merits.  It does, however, rule that the proposed amended

complaint states a plausible entitlement to relief under both

Abood and Janus.

The Court recognized that compelled membership in a labor

organization that negotiates with a state government employer --

even one that charges no fees -- may present a difficult First

Amendment problem.  In Abood, the Supreme Court acknowledged

that the question of whether a public employee could be

compelled to associate with a union under an agency shop

agreement was not presented and therefore did not address it.

431 U.S. at 217 n.10 ("As the agency shop before us does not

impose that additional [union membership] requirement, we have

no occasion to address that question").  In Janus, the Supreme

Court justified setting aside Abood on the ground that

permitting public employers to require employees to pay fees to

unions clashed with its line of cases forbidding those employers

from requiring employees to join political parties.  See Janus,

138 S. Ct. at 2484 (citing Elrod, 427 U.S. 347; Branti v.

Finkel, 445 U.S. 507 (1980); Rutan v. Republican Party of Ill.,

497 U.S. 62 (1990); O'Hare Truck Serv., Inc. v. City of

Northlake, 518 U.S. 712 (1996)).  The Supreme Court in Janus

left open though whether a public employer or public employee

union could enforce a requirement that an employee associate with, but not provide financial support to, a union. <u>See generally</u> 138 S. Ct. 2448. The Court need not consider that question here either because, insofar as the proposed amended complaint alleges that the Union enforces a bargaining agreement with a Puerto Rico government entity requiring Cotto to pay dues to an organization that he philosophically opposes, the proposed amended complaint states a plausible entitlement to relief.

## IV. JOINDER OF PARTIES AND CERTIFICATION OF CONSTITUTIONAL CHALLENGE

Although the Court ALLOWS Cotto to file his proposed amended complaint, the Court observes and rectifies two procedural flaws. First, Cotto did not join the Power Authority to either complaint. <u>See</u> Compl. 1; Proposed Am. Compl. 1. Yet without the Power Authority's presence, the Court "cannot accord complete relief" to Cotto were it to award him his requested injunctive relief. <u>See</u> Fed. R. Civ. P. 19(a)(1)(A). If the Court were to order the Union to let Cotto quit, that might not necessarily bind the Power Authority, which then might attempt to fire Cotto for not complying with the mandate to remain a Union member. Consequently, the Court orders the Power Authority joined as a defendant in this case. <u>See</u> Fed. R. Civ. P. 19(a)(2); <u>see also</u> Fed. R. Civ. P. 21 ("On motion or on its

own, the court may at any time, on just terms, add or drop a party.").

Second, as noted above, the Union president's letter to Cotto relied on three provisions of federal and Puerto Rico law to legitimize its union shop agreement with the Power Authority. See Proposed Am. Compl. ¶ 10 (citing October 1, 2018 Letter & English Translation, which cite the Taft-Hartley Act, 29 U.S.C. § 158(a)(3); Puerto Rico Labor Relations Act, P.R. Laws Ann. tit. 29, §§ 61-76; Puerto Rico Public Service Labor Relations Act, P.R. Laws Ann. tit. 3, §§ 1451-54a). These statutes seem to permit the union shop agreement to which the Union and the Power Authority agreed. See 29 U.S.C. § 158(a)(3); P.R. Laws Ann. tit. 29, § 69(1)(c); id. at tit. 3, §§ 1451a(b), 1454. This Court ruling for Cotto therefore would be tantamount to a ruling that those statutes violate the constitution as applied to him.

Federal Rule of Civil Procedure 5.1(a)(1) requires "a party that files a pleading . . . drawing into question the constitutionality of a federal or state statute [to] promptly file a notice of constitutional question." Though neither party did so here, their failure does not forfeit the constitutional issues presented. See Fed. R. Civ. P. 5.1(d).

Nevertheless, section 2403 of chapter 28 of the United States Code requires the Court to certify to the United States

[32]

or Puerto Rico attorney general that the case involves a challenge to the constitutionality of federal or Puerto Rico statute. See Oklahoma ex rel. Edmondson v. Pope, 516 F.3d 1214, 1215-16 (10th Cir. 2008) (interpreting section 2403 to mandate courts to certify constitutional challenges to statutes, even where parties neglect to submit a notice); see also Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000) (Puerto Rico attorney general intervened, citing section 2403(b)); Quiros Lopez v. Unanue Casal (In re Casal), 998 F.2d 28, 30 (1st Cir. 1993) (same); National Pharm., Inc. v. De Melecio, 51 F. Supp. 2d 45, 48 & n.1 (D.P.R. 1999) (Laffitte, J.) (same). Therefore, this Court certifies a constitutional challenge and provides the United States and Puerto Rico attorneys general sixty days to intervene in this case. See Fed. R. Civ. P. 5.1(c); 28 U.S.C. § 2403.

## V.  CONCLUSION

For the foregoing reasons, this Court ALLOWS Cotto leave to file his proposed amended complaint, ECF No. 46, only to the extent that it alleges a violation of Section 1983 for the February 11, 2016 protest and associated fine, and an entitlement to an injunction allowing him to resign from the Union. The Court DENIES the Union's motion to dismiss, ECF No. 48, for the same reasons. The Court also ORDERS the parties to advise it whether the Rooker-Feldman doctrine deprives it of

its jurisdiction to consider the Section 1983 claim regarding the February 11, 2016 protest and associated fine, or any other claims in the proposed amended complaint.

The Clerk shall add the Power Authority as a party and certify to the United States and Puerto Rico attorneys general that this case involves a constitutional challenge to federal and Puerto Rico statutes, as applied.

**SO ORDERED.**

_William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE

[34]